FILED
01/31/2025
Clerk of the
Appellate Courts

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs January 14, 2025

## STATE OF TENNESSEE v. NATHAN DAVID BASSETT

**Appeal from the Circuit Court for Madison County**
No. 23-180-3        Kyle C. Atkins, Judge
_____

### No. W2024-00826-CCA-R3-CD
_____

The Defendant, Nathan David Bassett, pled guilty in the Madison County Circuit Court to theft of property valued $10,000 or more. Pursuant to the plea agreement, he received a five-year sentence as a Range I, standard offender with the trial court to determine the manner of service of the sentence. After a sentencing hearing, the trial court ordered that the Defendant serve the sentence in confinement. On appeal, the Defendant contends that the trial court abused its discretion by denying a sentence alternative to confinement. Based on our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which J. ROSS DYER and MATTHEW J. WILSON, JJ., joined.

Joshua L. Phillips (on appeal and at trial), Lexington, Tennessee, for the appellant, Nathan David Bassett.

Jonathan Skrmetti, Attorney General and Reporter; Ryan Dugan, Assistant Attorney General; Jody Pickens, District Attorney General; and Benjamin Mayo and Joshua Prescott, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

In February 2023, the Madison County Grand Jury indicted the Defendant for theft of property valued at $10,000 or more but less than $60,000, a Class C felony. On April 23, 2024, he entered into a plea agreement with the State in which he agreed to plead guilty

to the offense and receive a five-year sentence as a Range I, standard offender. The trial court was to determine the manner of service of the sentence.

At the guilty plea hearing, the State gave the following factual account of the crime:

Your Honor, if trial were held in this case the State would show that on or about November 1, 2022, Ambarish Keshani, owner of Cinema Group, Incorporated, otherwise known as Hollywood Cinema, reported to officers of the Jackson Police Department that [the Defendant], an employee of Hollywood Cinema, had been stealing money from the business.

Keshani had reviewed his business' bank accounts as well as business' accounting records and determined there were some discrepancies between the two. Upon further review of the records, Keshani discovered that [the Defendant] failed to deposit the business' money at Simmons Bank on several occasions between September 17th, 2022, and October 26, 2022.

Keshani advised that the approximate amount of money taken was $19,333.50. Keshani provided Investigator Listenbee with documentation showing [the Defendant] was responsible for most of the deposits and those deposits were never made at Simmons Bank.

At the conclusion of the plea hearing, the trial court accepted the Defendant's guilty plea and sentenced him to the agreed sentence.

On May 29, 2024, the trial court held a sentencing hearing to determine the manner of service of the sentence. At the outset of the hearing, the State advised the trial court that while the Defendant was on bond in this case, he "picked up a misdemeanor marijuana possession, which he subsequently pled guilty to in either City Court or in General Sessions Court[.]" The State also reminded the trial court that the Defendant "got in the wind on us for about eight months," which ultimately led to his bond being revoked, and advised the trial court that he recently had been arrested for conduct against his wife. The State argued that based on the Defendant's presentence report, including his prior record, and his conduct while awaiting sentencing, the trial court should not place him on probation.

The State introduced the Defendant's presentence report into evidence. According to the report, the then thirty-year-old Defendant was married with two young children. The Defendant had two additional children, but the mothers of those children had restraining orders against him, so he did not have contact with those children. The Defendant stated in the report that he had scoliosis and back pain and that he was diagnosed with bipolar

disorder when he was a child. He said that he had not been employed since November 2022 and that he relied on his wife and her parents to pay the bills.

The presentence report showed that the Defendant pled guilty to misdemeanor possession of marijuana in Madison County on April 23, 2024, and that he was fined for violating the child restraint law in Madison County in May 2017. Additionally, the report showed that the Defendant had convictions in Colorado in 2013, 2015, and 2017 for receiving stolen property, traffic offenses, harassment, contempt of court, and disorderly conduct and had convictions in New York in 2018, 2019, and 2022 for misdemeanor criminal contempt, felony criminal contempt, operating a motor vehicle while impaired by drugs, aggravated unlicensed operation of a motor vehicle, and a red light violation. The report showed that the Defendant also violated probation in Colorado in 2016. At the time of the presentence report, the Defendant was wanted on a 2019 warrant in Centennial, Colorado, for failing to appear, and a capias had been issued in Chester County, Tennessee, due to his failure to appear in general sessions court on a charge of driving on a suspended license.

According to the Defendant's Strong-R assessment, which was attached to the presentence report, he was considered a moderate risk to reoffend with high needs in mental health. The Strong-R assessment stated that the Defendant had a problem with marijuana and that he had not received any drug treatment.

Steven John Bassett, the Defendant's father, testified on the Defendant's behalf that he talked with the Defendant two or three times per day. Recently, Mr. Bassett had noticed that the Defendant's "conduct was back to when he was as a kid" and that the Defendant was "talking positive." Mr. Bassett said the Defendant "finally got a Bible" and met "Brother Jim," who "helped him quite a bit." The Defendant had surrendered his life and could change if he went to rehabilitation. Mr. Basset said that he would provide guidance to the Defendant and allow the Defendant to live with him if the trial court granted probation. Mr. Bassett requested that the trial court grant the Defendant some form of alternative sentencing involving drug or alcohol treatment.

On cross-examination, Mr. Bassett testified that the Defendant grew up in Colorado and was first arrested in that state in 2013. In 2018, the Defendant moved to New York to be with his girlfriend. Mr. Bassett acknowledged that he had seen a positive change in the Defendant since the Defendant was arrested in this case. However, he acknowledged that the Defendant had been incarcerated for only a couple of months. He acknowledged that the Defendant had to "hit rock bottom" before the Defendant decided to straighten out his life but said that he thought the Defendant had accepted responsibility for the Defendant's actions. On redirect-examination, Mr. Bassett testified that the Defendant finally wanted to change and that "I absolutely see it in his eyes right now and I see it in his voice when I

talk to him on the phone. I didn't have this before when I -- he got in trouble and I talked to him."

Jim McKissack testified that he was a volunteer chaplain at the Madison County Jail and that the Defendant requested to speak with him one day while Mr. McKissack was at the jail. The Defendant told Mr. McKissack about his personal and legal concerns, and Mr. McKissack told the Defendant that God could change the Defendant's life. Mr. McKissack said that the Defendant was very receptive to his message and that he had seen a positive change in the Defendant's demeanor. The Defendant contacted Orchard House about its rehabilitation program and told Mr. McKissack that he had been approved for the program. Mr. McKissack spoke with someone at Orchard House and confirmed that the Defendant had been approved to enter the program. Mr. McKissack said that the Defendant's approaching Orchard House on his own accord showed that he wanted to change his life. Mr. McKissack said he would continue ministering to the Defendant if the trial court placed the Defendant on probation.

On cross-examination, Mr. McKissack acknowledged that he met the Defendant only one month before the sentencing hearing. He said, though, "I know him probably better than most people would in a month's time as a chaplain. We've had a lot of intense conversations and several phone conversations, as well." On redirect-examination, Mr. McKissack testified that the Defendant had been truthful with him, that the Defendant was willing to change, and that he thought the Defendant was being sincere.

At the conclusion of Mr. McKissack's testimony, the State advised the trial court as follows:

> While we were sitting here, I was just looking at my notes and his first failure to appear issues started on August the 15th of '23. He wasn't at court. Supposedly there was a funeral, and he had car trouble getting back to Madison County.
>
> You instructed him through his attorney for there to be proof of both the funeral and the car trouble when we returned September 11th of '23. That's when he stopped coming to court.
>
> We finally get him back, based on the testimony we've heard, probably sometime late March, early April. I probably foolishly allowed [him] to have his bond reinstated for him to go attend, I guess, another funeral, because I'm not the smartest, I guess, and didn't look at my file about what he uses as excuses for why he should and shouldn't be in custody.

- 4 -

And then he decided to reward me by getting rearrested on an offense involving his family.

Quite frankly, Your Honor, I can deal with not showing up, I can deal with people -- with these little misdemeanor marijuana possessions, but I don't take it lightly when I give you an opportunity when I have no reason to and you put it in my face, and I don't think the Court should either.

[The Defendant] has been given time and time and time again an opportunity again and again and again to do the right thing and continues to not do the right thing.

Defense counsel responded that the Defendant had paid back about $10,000 to the victim in this case.[1] Defense counsel advised the trial court that although the presentence report stated that the Defendant was unemployed, the Defendant owned an organic nursery and supply company in which he earned three to four thousand dollars per month and that placing him on probation or in a rehabilitation program would allow him to continue paying restitution, which benefitted society and the court system.

The trial court noted that the only issue was the manner of service of the five-year sentence. The court stated that it had considered the evidence presented at the sentencing hearing, including the testimony of Mr. Bassett and Mr. McKissack and the presentence report; the principles of sentencing; the arguments regarding sentencing alternatives; the nature and characteristics of the criminal conduct involved; the evidence and information offered by the parties on mitigating and enhancement factors; and statistical information offered by the Administrative Office of the Courts as to sentencing practices. The trial court found that the Defendant's moderate risk to reoffend; his criminal record; his prior probation violation; and his physical, mental, and social history weighed against granting probation. The trial court found that the facts and circumstances surrounding the offense and that the nature and circumstances of the criminal conduct involved probably weighed in favor of granting probation. The trial court found that the Defendant's potential for rehabilitation was poor, stating that "he's had multiple opportunities to be rehabilitated and has not done so and continues to commit criminal offenses." Finally, the trial court found that the interests of society being protected from possible further future criminal conduct were great, that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the Defendant, and that full probation would unduly depreciate

---

[1] The written request for acceptance of guilty plea and petition to waive trial by jury provided that restitution would be determined at the sentencing hearing. At sentencing, defense counsel stated, "Your Honor, he does owe restitution in this matter." However, the record does not reflect that the trial court ever ordered restitution.

the seriousness of the offense. The court ordered that he serve his five-year sentence in confinement.

## ANALYSIS

The Defendant claims that the trial court abused its discretion when it failed to order a sentence alternative to incarceration and failed to order that he participate in a rehabilitation program. He asserts that his high likelihood of rehabilitation, his desire to change his life, his support from his father and Mr. McKissack, the nature and circumstances of the offense, and his ability to continue paying restitution if released from confinement weigh in favor of alternative sentencing. The State argues that the trial court did not abuse its discretion. We agree with the State.

This court reviews the length, range, and manner of service imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012) (applying the standard to alternative sentencing). The burden is on the Defendant to demonstrate the impropriety of his or her sentence. *See* Tenn. Code Ann. § 40-35-401, Sent'g Com'n Cmts.

In this case, the guilty plea that had been accepted by the trial court called for a sentence of five years as a Range I, standard offender. The only issue before the trial court was whether the Defendant would serve this sentence in custody or be placed on some form of alternative punishment. A defendant is eligible for an alternative sentence if the sentence actually imposed is ten years or less. *See* Tenn. Code Ann. § 40-35-303(a). The Defendant's sentence meets this requirement. Moreover, a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. *See* Tenn. Code Ann. § 40-35-102(6). In this case, the Defendant is a standard offender convicted of a Class C felony.

In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). Additionally, a court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence is appropriate. *See* Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

The burden is on the defendant to demonstrate suitability for full probation. *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017). In evaluating the suitability of probation, the trial court should consider: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *Id*.

Based on our review, we agree with the State that the trial court acted within its discretion when it denied the Defendant's request for probation or any other form of alternative sentencing. The Defendant previously violated probation, he has a history of failing to appear in court, and he pled guilty to misdemeanor possession of marijuana while awaiting sentencing in this case. The trial court considered, among other things, the evidence at the sentencing hearing, the principles of sentencing, the arguments as to sentencing alternatives, and the nature and characteristics of the criminal conduct in determining whether an alternative sentence was appropriate and concluded that the Defendant's moderate risk to reoffend; his criminal record; his prior probation violation; and his physical, mental, and social history weighed against granting probation. Moreover, the Defendant has been committing crimes since 2013, and his failure to seek treatment for addiction to drugs or alcohol reflects poorly on his potential for rehabilitation. The trial court specifically found that most of the considerations in Tennessee Code Annotated section 40-35-103(1) weighed against alternative sentencing. Accordingly, we conclude that the trial court did not abuse its discretion in ordering that the Defendant serve his five-year sentence in confinement.

## CONCLUSION

Upon our review, we affirm the judgment of the trial court.

s/ John W. Campbell
JOHN W. CAMPBELL, SR., JUDGE